**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

UNITED STATES OF AMERICA

        v.                        Criminal# 09-CR-10389-RGS

JOHN FORBES

**DEFENDANT'S SENTENCING MEMORANDUM**
**AND MOTION FOR VARIANCE FROM THE GUIDELINE RANGE**

**Introduction**

      John Forbes respectfully submits this memorandum to assist this Honorable Court in determining an appropriate sentence. For the reasons set forth in detail below, Mr. Forbes respectfully requests that the court sentence him to a period of probation.

      Mr. Forbes is a 31 year-old hard-working man. He is married with two young children. He has no prior criminal record. The allegations in the instant case stem from Mr. Forbes' addiction to oxycodone, and not from any criminal malice. Since his arrest and pretrial incarceration in this matter, Mr. Forbes has successfully completed an inpatient drug rehabilitation program, has remained drug-free, and has acted as a leader in both NA and group counseling.

      Under the circumstances present in Mr. Forbes' offense and personal characteristics, a sentence of probation, along with the time that Mr. Forbes already served in pretrial custody, is a sentence that is more than sufficient to comply with the purposes set forth in 18 U.S.C. §3553(a)(2). Such a sentence reflects the seriousness of Mr. Forbes' particular offense, promotes respect for the law, and most importantly provides a fair and just punishment.

1

Under the circumstances of this case, the sentence proposed by the government under the advisory guidelines is greater than necessary to accomplish the sentencing goals.  The particular circumstances that make the advisory guideline range excessive will be discussed below.

**Procedural History**

John Forbes was arrested for his involvement in the instant case on December 17, 2009.  Mr. Forbes was held in federal custody and served 75 days in a federal jail until he was released with pretrial conditions on March 2, 2010.  Mr. Forbes then voluntarily entered a residential drug treatment program.

On April 28, 2010, Mr. Forbes was charged in a superseding Information with conspiracy to possess with intent to distribute oxycodone and cocaine (21 U.S.C. § 846); possession with intent to distribute oxycodone and distribution of oxycodone and aiding and abetting (21 U.S.C. § 841(a)(1)); and possession with intent to distribute cocaine (21 U.S.C. § 841(a)(1)).

On October 22, 2010, John Forbes pled guilty before this Honorable Court. It should be noted at the outset that Mr. Forbes did not plead guilty as to any specific quantities or weights.

**History and Characteristics of John Forbes**

John Forbes is 31 years old and he is married with two young children.  Mr. Forbes has worked since he was 16 years old.  He worked part-time while in school and full-time every summer.  Mr. Forbes continued working during college to pay for his college tuition.  Mr. Forbes has maintained full-time employment since he left school.

In addition to his full-time jobs, Mr. Forbes has been very actively involved in community service.  Mr. Forbes has volunteered as an athletic coach for a number of different East Boston sports leagues.  Mr. Forbes has also volunteered at the Boys & Girls Club, he has organized clothing donations for East Boston residents who have lost their homes to fires, and Mr. Forbes has volunteered for his church.

Further, Mr. Forbes is actively involved in raising his own two young children, which includes attending all school functions and parent/teacher conferences for his oldest school-aged child.

Mr. Forbes objects to the characterization that his substance abuse progressed "mutually" and continued until the defendant was arrested for the instant offense.  Mr. Forbes explained to probation that he became addicted to oxycodone and was taking five 80-milligram oxycodone pills a day "just to function."  He described how his thought process and decision-making became impaired due to his drug addiction.  He described how the drug controlled him and how he constantly was "chasing the high."

Mr. Forbes explained that his income from his job was not enough to cover the expense of his habit.  In addition to supporting his own addiction, Mr. Forbes was attempting to support his wife's addiction also.  The need for this drug took control of his life and he made a number of selfish and stupid decisions to feed his habit, including becoming involved in the sale of 125 oxycodone pills.  This sale specifically allowed Mr. Forbes to "keep five" oxycodone for himself, which further evidenced his severe addiction to this drug.

Mr. Forbes did not and does not blame anyone but himself for his "bad choices."  Specifically, he acknowledged that he was "brought up" better than that.  He refused to

blame his parents or the lack of money in his family for his choices.  He specifically acknowledged that choices have consequence and that now it is time for him to pay the consequences for his choices.  He indicated that now that he is clean, he realizes how this drug controlled his life, but that when he was in the midst of his addiction, he always thought he had everything under control.  He acknowledged that this control he thought he had was just a game he played with himself so that he did not have to face the truth of his addiction.  Forbes acknowledged that while he was under the influence of drugs, he could convince himself that what he was doing was not wrong, that he was not an addict and that he still had a job, so that he must be okay.

Mr. Forbes entered the SSTAR program on March 2, 2010.  Mr. Forbes' positive attitude allowed him to exceed the expectations of the program.  Mr. Forbes described his experience at SSTAR as "a great opportunity to learn."

Mr. Forbes entered the Steppingstone program on March 22, 2010.  Mr. Forbes quickly incorporated coping skills and set goals for his treatment and recovery.  Mr. Forbes agreed to voluntarily limit his family visits to allow him to better focus on his recovery.  Mr. Forbes voluntarily joined a 12-step program outside of Steppingstone, received a sponsor, and began advancing his recovery.

Mr. Forbes was a leader in the Steppingstone house and took new arrivals under his wing, showing them how to best adjust to sober life.  Because of his tremendous dedication to his recovery, Mr. Forbes graduated early from Steppingstone and is now involved in individual therapy at North Suffolk Mental Health.  In addition, Mr. Forbes is a regular speaker at several NA/AA meetings.

Mr. Forbes indicated that no matter what happens here before this Court, he will be clean and sober.  He indicated that he is not in recovery for the Court, but rather that he is in recovery for himself.  He has indicated that he feels he has taken so much from the community due to his addiction and that he needs to "make it right."

Mr. Forbes has already contacted a number of organizations and his church about his desire to sponsor a drug recovery program in East Boston.  Mr. Forbes has initial plans for an East Boston Oxycontin Counseling Program. Mr. Forbes recovery has truly been extraordinary.

Mr. Forbes has pled guilty and has accepted responsibility for the weakness he exhibited when his drug addiction caused him to be peripherally involved in a drug sale so that Mr. Forbes could get five oxycontin pills to feed his addiction. But Mr. Forbes' crime was an aberrant event in an otherwise unblemished life.  He is not someone who has been given second or third chances by judges or prosecutors in the past, and failed to learn his lesson.  Mr. Forbes made one bad choice, and that one bad decision was influenced by his addiction to oxycontin.  Mr. Forbes regrets it, he has completed rehabilitation and is now clean and sober, and most importantly he now has a support system in place so that this will never occur again.

Mr. Forbes deserves the chance to prove that he gets it.  A term of probation would give him that chance.  Nothing more is necessary, and thus anything more would be unconstitutional.

**The Advisory Guidelines**

Following the seminal Supreme Court decision (*Booker*, 543 U.S. 220, 262 (2005)) that made the guidelines advisory, a series of other Supreme Court decisions have outlined the factors a sentencing court should consider in formulating a defendant's sentence.  *See Gall v. United States*, 128 S.Ct. 586 ( 2007) and *Kimbrough v. United States*, 128 S.Ct. 558 (2007); *Rita v United States,* 127 S.Ct. 2456 (2007).

The First Circuit has weighed in on the scope and extent of a District Court's discretion under the now-advisory federal sentencing guidelines.  *U.S. v Martin,* 520 F.3d 87 (1st Cir. 2008).  The *Martin* court advises "A sentencing determination should begin with the calculation of the particular defendant's GSR…[including] an assess[ment] of any departures…    Properly calibrated, the GSR should serve as the sentencing court's 'starting point' or 'initial benchmark.' *Gall, 128 S.Ct* at 596; *Martin at 91*.  Procedurally, as *Gall* and now *Martin* direct, we begin with the Advisory Guideline range.

**Disputed Issues Involving The Advisory Guideline Range**

There is disagreement between Mr. Forbes and the Probation Department regarding the appropriate guideline level.  Mr. Forbes filed Objections to the PSR. However, the Probation Department declined to alter the PSR based on the substantive objections.

Mr. Forbes objects to the government's version of the offense conduct.  Mr. Forbes objects to the offense-level computation.  Mr. Forbes also objects to the manner in which drug quantity was calculated and attributed to Forbes.

Mr. Forbes also objects to the standard practice of the Probation Department to not recommend certain downward departures and variances.  Mr. Forbes asserts that such departures are appropriate in this case.

**Government's Version of Offense Conduct**

Mr. Forbes asserts that the government's version of the offense conduct does not accurately depict Mr. Forbes' limited involvement in the alleged illegal activity.

1.       **The Government's Offense Conduct Is Misleading Because It Attempts To Overstate Mr. Forbes' Involvement By Detailing Conduct Of Co-Defendant Taylor That Did Not Involve Forbes And Was Outside The Time Frame of the Alleged Conspiracy.**

Mr. Forbes objects to the Government's claim that "during the course of an investigation, the Drug Enforcement Administration (DEA) gathered evidence, through the use of a cooperating witness ("CW") of various drug transactions involving John Forbes and/or Lawrence Taylor."

That claim is misleading and incorrect.  In fact, Mr. Forbes was involved in only one drug transaction for 125 oxycodone pills, which took place on August 20, 2009.  According to the testimony of James Doyle at the detention hearing, which took place on December 21, 2009, the investigation referenced by the government began in "approximately June of 2008." (Tr.-5).  This investigation focused on co-defendant Lawrence Taylor and an individual by the name of Anthony Cristallo.  Mr. Forbes was not mentioned and did not even come to the attention of law enforcement officials with respect to any potential drug involvement until August of 2009.  Agent Doyle did testify that on May 5, 2009, a person identified as the confidential informant had a conversation with Mr. Forbes in City Hall where the informant asked for a job with the city and Forbes told him he would "see what he could do." (Tr-7).  However, that was not a drug

transaction, and in fact the only drug transaction directly attributed to Mr. Forbes was the single transaction that took place on August 20, 2009.

In addition, the September 16, 2008 sale and the March 30, 2009 sale allegedly made by Taylor fall outside the time frame of the alleged conspiracy and should not be attributed to Mr. Forbes.  The Information that Mr. Forbes pled guilty to indicates that the charged conspiracy occurred from August 20, 2009 through December 16, 2009.  Alleged sales in September of 2008 and March of 2009 clearly fall outside the time frame of the conspiracy and should not be included as offense conduct of Mr. Forbes. See *United States v. Munson*, 819 F.2d 337 (1st Cir.1987) (indictment charged defendant with conspiracy occurring from November 18th to November 20th, thus error for statement by co-conspirator made on November 24th to be used against defendant).

Next, neither the September 16, 2008 sale nor the March 30, 2009 sale that the PSR references involved Mr. Forbes.  In fact, Mr. Forbes was not involved in either of these alleged sales in any manner. There is no evidence to support any claim that these sales involved Mr. Forbes or were reasonably foreseeable to Mr. Forbes.  As such, due process requires that these sales not be attributed to Mr. Forbes in any manner.  *See United States v. Tucker*, 404 U.S. 443, 447 (1972); *United States v. Curran*, 926 F.2d 59 (1st Cir. 1991).

Thus, the government's version of the offense is misleading in that it attempts to hold Mr. Forbes responsible for a series of other drug transactions that Mr. Forbes had no part in and that fell outside the time frame of the alleged conspiracy. Therefore, these alleged sales should not be included in any quantity determination involving Mr. Forbes,

and they should not be included in the nature and circumstances of Mr. Forbes own

conduct.

The government's claim in the Offense Conduct has the effect of portraying Mr.

Forbes as being involved throughout the entire investigation, when in fact he was only

peripherally involved as a minimal participant in the transaction occurring on August 20,

2009.  The Offense Conduct should reflect Mr. Forbes' minimal or minor role.

2.      **The Present Charges Have Absolutely Nothing To Do With Mr. Forbes' Previous Employment.**

Mr. Forbes also objects to the inclusion of the reference to Mr.

Forbes' job working for the Boston Mayor's Office as the East Boston Coordinator for

the Office of Neighborhood Services.  Mr. Forbes' employment and connection to the

Mayor's office has nothing to do with the allegations in this case.  The reference to the

Mayor's office has caused unnecessary and unwarranted publicity in this case. Mr.

Forbes requests that this portion of the Government's Offense Conduct be stricken from

the record.

3.      **Mr. Forbes Was Not The Person On the Phone When The CW Called Someone To Allegedly Order Cocaine.**

The transaction between Mr. Taylor and another person for 10 ounces of cocaine

should not be attributed to Mr. Forbes because the government has not proved that the

person on the other end of the phone was John Forbes. *United States v. Curran*, 926 F.2d

59 (1st Cir. 1991).

In fact, the Government's claim that the CW contacted Forbes via telephone on

December 15, 2009 to arrange for the sale of 10 ounces of cocaine to the CW is false.

Mr. Forbes maintains that he was not the person on the other end of the phone and he did not speak to the CW by phone on December 15, 2009.  Mr. Forbes denies that he was the person who instructed that the CW refer to ounces of cocaine as "ladies."  Mr. Forbes maintains that the telephone number called on December 15, 2009 was not his telephone number.  Mr. Forbes denies that he instructed the CW to call him the following day.  The voice on the phone for December 15, 2009 is not John Forbes.  There is no indication as to who identified the voice on the phone as Mr. Forbes or how the voice is identified as Mr. Forbes.  Regardless of the reason for this error, that alleged conversation should not be attributed to Mr. Forbes because he did not take part in the conversation.

The government's claim that 10 ounces of cocaine should be attributed to Mr. Forbes is not supported by any reliable evidence and appears to be erroneous. A defendant has a due process right not to be sentenced on the basis of materially incorrect evidence.  *See United States v. Tucker*, 404 U.S. 443, 447 (1972); *United States v. Reid*, 911 F.2d 1456 (10th Cir. 1990), *cert. denied*, 498 U.S. 1097 (1991); *United States v. Curran*, 926 F.2d 59 (1st Cir. 1991).   Because the government cannot present any evidence to support this claim, the ten ounces of cocaine sold by Taylor must not be attributed to Mr. Forbes in the total drug weight.

**Offense Level Computation**

Mr. Forbes asserts that the base offense level should be no greater than a level 10. *See United States v. Cotton,* 535 U.S. 625 (2002); *Apprendi v. New Jersey,* 530 U.S. 466 (2000).

1. **Since The Government Did Not Plead Any Drug Quantity In the Information, And Since Forbes Did Not Plead Guilty To Any Specified Quantity, The Lowest Possible Quantity Must Be Used.**

Because the government failed to plead and prove quantity, the default guideline calculation applied to Mr. Forbes should be 0-6 months. *United States v. Cotton,* 535 U.S. 625 (2002); *Apprendi v. New Jersey,* 530 U.S. 466 (2000).

In this case, because the government did not plead any quantity in the Information, individually or as part of a conspiracy, the guidelines require that the default guideline minimum, the lowest possible AGL sentence, be calculated which is 0-6 months.   As such, Mr. Forbes guideline range is 0-6 months as an un-quantified conspiracy.

The government assumed the risk of Mr. Forbes becoming eligible for the default guideline maximum when they intentionally filed an Information absent any reference to quantity.  The government now should not be in a position to benefit from its failed strategy.  To give the government a second bite at the apple, under a lower standard of proof, would violate the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). See also *United States v. O'Brien*, 130 S.Ct. 2169 (2010).

2. **The Government's Allegation That Co-Defendant Taylor's Drug Sale Was Reasonably Foreseeable To Forbes Is Not Supported By Reliable Evidence.**

Mr. Forbes objects to any calculation that indicates that the actions of Taylor in selling ten ounces of cocaine were reasonably foreseeable to Forbes.  Such an allegation is not supported by any reliable evidence.  The government speculates that Forbes planned to meet Taylor, but no evidence exists to support such an allegation.

As such, the ten ounces that Taylor allegedly attempted to sell are not attributable to Mr. Forbes. *See Tucker*, 404 U.S. 443, 447 (1972); *Reid*, 911 F.2d 1456 (10th Cir. 1990), *cert. denied*, 498 U.S. 1097 (1991); *Curran*, 926 F.2d 59 (1st Cir. 1991).

**3.**      **The Government's Allegation Specifically Attributing 10 ounces of Cocaine To Forbes Is False.**

The government claims that Forbes should be held accountable for ten ounces of cocaine that were possessed by co-defendant Taylor.  The "evidence" that the government relies on to make that allegation is incorrect.  Although Mr. Forbes pled guilty, he did not plead guilty to that quantity of cocaine.

Mr. Forbes maintains that he was not the person on the other end of the phone and he did not speak to the CW by phone on December 15, 2009.  Mr. Forbes denies that he was the person who instructed that the CW refer to ounces of cocaine as "ladies."  Mr. Forbes maintains that the telephone number called on December 15, 2009 was not his telephone number.  Mr. Forbes denies that he instructed the CW to call him the following day.  The voice on the phone for December 15, 2009 is not John Forbes.  There is no indication as to who identified the voice on the phone as Mr. Forbes or how the voice is identified as Mr. Forbes.  Regardless of the reason for this error, that alleged conversation should not be attributed to Mr. Forbes because he did not take part in the conversation.

As such, the ten ounces of cocaine sold by Taylor must not be attributed to Mr. Forbes in the total drug weight.  *See United States v. Tucker*, 404 U.S. 443, 447 (1972).

**4.**     **The Conversion Table Equating One Single Gram of Oxycodone To 6,700 Grams Of Marijuana Is Excessive, Unconstitutional, And Causes Unwanted Disparity.**

The conversion table for oxycodone to marijuana, equating one gram of oxycodone to 6,700 grams of marijuana, is arbitrary and is not supported by any scientific data.  As such, this Court should correct this disparity by applying a more appropriate conversion rate or by departing downward.

The equivalency of oxycodone to marijuana in the guidelines is excessive in light of the equivalencies used for comparative narcotics.  A lesser equivalency should be used to calculate Forbes' base level offense.  On November 1, 2003, Amendment 657 (the oxycodone amendment) to U.S.S.G. §1B1.10(c), instructed courts to use the actual weight of the oxycodone in the tablet to establish the base level offense.  The oxycodone amendment also increased the marijuana equivalency for oxycodone.  Whereas previously 1 gram of oxycodone had equaled 500 grams of marijuana, currently 1 gram of oxycodone equals 6700 grams of marijuana.  There is no support for this number, which constitutes a hugely disparate equivalency calculation.  This disparity is evidenced by the lesser equivalencies of narcotic-to-marijuana applied to comparative schedule II substances.

Other schedule I and II narcotic substances have far smaller narcotic-to-marijuana equivalencies.  For example, 1 gram of cocaine is equivalent to 200 grams of marijuana; 1 gram of MDMA (or ecstasy) is equivalent to 500 gm of marijuana; 1 gram of codeine is the equivalent of 80 grams of marijuana.  These substances are arguably very similar in their narcotic effect, yet oxycodone carries a significantly higher equivalency, and thus a

significantly higher penalty, without support.  This, like the crack to cocaine disparity that was previously remedied within the sentencing guidelines, has a disparate effect without the necessary support.

In the instant case, the conversion rate for oxycodone to marijuana of 1 gram to 6700 grams is unnecessarily inflated without justification.  Forbes contends that the equivalency for 1 gram of oxycodone to marijuana should be treated like the cocaine equivalency.  The grams of oxycodone that are attributed to Forbes would be the equivalent of 1960 grams of marijuana, resulting in a base level of 10.  This is far disparate from the base level currently attributed to Forbes, based upon a marijuana equivalency that was amended in November of 2003 without support for such a high increase in equivalency.

If the current oxycodone to marijuana equivalency is used, it would result in a substantively unreasonable sentence in violation of Forbes's right to due process as guaranteed by the Fifth Amendment to the United States Constitution because the sentencing range would be determined by an arbitrary and unsupported oxycodone to marijuana equivalency standard.   Because the penalty disparity between oxycodone and like drugs is arbitrarily assigned, a sentence that far exceeds the penalty that one would be subjected to for convictions of similar offenses with similar narcotics, such as cocaine or codeine, violates due process.

As such, Forbes contends that his drug weight should be similar to the cocaine to marijuana equivalency, resulting in a base level offense of 10.  *Kimbrough v. United States*, 128 S.Ct. 558 (2007).

**Departures**

Mr. Forbes asserts that the base offense level should be no greater than 10. Regardless of whether the base offense level is ten or not, the following departures are appropriate in this case:

1.     **A downward departure is appropriate where the Information charged no quantity, and after *U.S. v. O'Brien*, quantity is an element of the offense that must be pled and proved, beyond a reasonable doubt.**

Drug quantity should be pled and proved beyond a reasonable doubt, thus Forbes is entitled to a departure for the government's failure to do so in the present case. *United States v. O'Brien* affirms that factors that increase the sentence must be found beyond a reasonable doubt. 130 S.Ct. 2169 (2010). At issue in *O'Brien* was a finding of whether the fact that the firearm used in the commission of the offense was a machine gun constituted a sentencing factor or an element of the offense. *Id.* at 2173. In *O'Brien*, the United States Supreme Court drew distinction between what classified "sentencing factors" and "elements of the crime." *See Id.*

"Sentencing factors traditionally involve characteristics of the offender – such as recidivism, cooperation with law enforcement, or acceptance of responsibility." *See Id.* at 2176. Whereas, "[c]haracteristics of the offense itself are traditionally treated as elements…" *Id.* The Court determined that the use of a machine gun under the statute "lies 'closest to the heart of the crime at issue.'" *Id.* The distinction is in whether the factor enhances the maximum penalty already before the court, which, in this case, the use of a machine gun did do. *See Id.*

Like the machine gun at issue under 18 U.S.C. 924 (c) in *O'Brien,* the drug

weight and its equivalency to marijuana would increase the maximum potential penalty

available to the Court here.  It was only because of the drug weight determination that

Forbes' guideline range could be determined.  If the drug weight and its marijuana

equivalency were less, the maximum advised sentence will be less. These determinations

modify the maximum guideline range sentence similar to the machine gun finding in

*O'Brien*.  Thus, these determinations are not similar to recidivism, or acceptance of

responsibility, but instead are akin to elements of the offense.

Drug quantity and equivalency should be proven beyond a reasonable doubt. *U.S.*

*v. Gray*, 362 F. Supp. 2d 714 (S.D.WVa. 2005)(in drug case suggesting that if guideline

calculated by preponderance standard was greater than that calculated beyond a

reasonable doubt standard, court's confidence in correctness advisory guideline

undermined and sentence should be lower accordingly); *Cf. U.S. v. Malouf*, 377 F. Supp.

2d 315 (D.Mass 2005)(After *Apprendi* and *Booker,* Sixth Amendment requires drug

quantity to be proved beyond a reasonable doubt; alternatively required by Due Process

clause of the Fifth Amendment – same is true when mandatory minimum is alleged –

here evidence was insufficient to establish, beyond reasonable doubt, that participant in

cocaine distribution conspiracy was responsible for 500 grams needed to subject him to

mandatory minimum sentence.); *U.S. v. Leroy*, 373 F.Supp.2d 887 n.2 (ED Wisc 2005)

(sentence of 70 months, rather than the United States Sentencing Guidelines of 100 to

125 months, was sufficient, but not greater than necessary, to serve purposes of

sentencing.  "Despite the applicability of a preponderance standard to guideline to

guideline determinations, judges should still require a high degree of confidence in any

finding that increases the sentence.").

In the present case, the government has failed to plead and prove any quantity beyond a reasonable doubt.  Since the government failed to plead and prove quantity, and since Forbes pled guilty only to the Information, this Court should depart downward to the base level for the lowest available quantity.

2.      **A downward departure is appropriate because of Forbes' Minimal Role in the Overall Offense.**

The sentencing guidelines allow for a four level departure for one who is a minimal participant, meant to apply to those "defendants who are plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2, application note 1.  "It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. §3B1.2, application note 4.  Here, Forbes fits the definition of a minimal participant.

Mr. Forbes has accepted full responsibility for his actions and has waived indictment to facilitate his plea.  However, Forbes' acceptance of his own responsibility does not increase his minimal role in the overall criminal investigation.  Here, Mr. Forbes was involved in only one drug transaction for 125 oxycodone pills, which took place on August 20, 2009. According to the testimony of James Doyle at the detention hearing, which took place on December 21, 2009, the investigation referenced by the government began in "approximately June of 2008". (Tr. -5).   This investigation focused on co-defendant Lawrence Taylor and an individual by the name of Anthony Cristallo. Even the narrative in the PSR makes clear that Forbes was never considered a primary player in any alleged distribution or conspiracy.  Mr. Forbes was not mentioned, and did not even come to the attention of law enforcement officials with respect to any potential drug involvement, until August of 2009.

Thus, to the extent that drugs were distributed, Mr. Forbes was a minimal participant, and this Court should depart downward four levels. U.S.S.G. § 3B1.2.  See also *U.S. v. Restrepo*, 936 F2dd 661 (2nd Cir. 1991) (based on minimal role in a money laundering offense- merely unloading boxes of money in a warehouse on one date - - defendant received both a four- level offense reduction and a four level downward departure); *Albs*, 933 F.2d 1117 (2nd Cir. 1991*); U.S. v. Bierley*, 922 F2d 1061 (3rd Cir. 1990) (minimum role departure available even where defendant sole actor in buying pornography from agent); *U.S. v. Speeenburgh*, 990 F.2d 72, 75-76 (2nd Cir 1993) (where defendant ineligible for minor role reduction because other participant is a government agent, downward departure proper).

Even if this Court determines that Forbes does not qualify for the four level reduction for being a minimal participant, Forbes certainly qualifies for a two or three level departure as a minor participant. *See United States v. Munoz*, 36 F.3d 1229 (1st Cir. 1994) (affirming the district court's finding that defendant's role was that of a minor participant where he was involved in at least four cocaine transactions and performed number of functions within conspiracy). The guidelines allow a two level departure for one who is a minor participant in the criminal activity; this departure is meant to apply to "any participant who is less culpable than most other participants, but whose role could not be described as minimal."  U.S.S.G. s. 3B1.2, application note 5.  Where the defendant's conduct falls between these two levels of culpability, a downward departure of three levels may be awarded.  *See Id.; United States v. Royal*, 100 F.3d 1019 (1st Cir. 1996).

Here, Forbes qualifies for a four-level reduction for minimal role.  But at a minimum, Forbes should receive a two or three level departure as a minor participant. *See United States v. Munoz*, 36 F.3d 1229 (1st Cir. 1994) (affirming the district court's finding that defendant's role was that of a minor participant where he was involved in at least four cocaine transactions and performed number of functions within conspiracy).

3.     **An additional downward departure is appropriate where Forbes had only peripheral involvement.**

With respect to the investigation that this case arose from, Mr. Forbes was involved only peripherally, and is thus entitled to a downward departure.  *U.S. v. Jaber*, 362 F. Supp 365 (D. Mass. 2005)(In conspiracy to distribute methamphetamines case, downward departure from 57 months to probation was appropriate in part because "the two level minor role adjustment does not begin to reflect his position in this enterprise – an employee, on a salary, taking directions from Jaber.  Moreover, if the drug quantity did not adequately reflect [the co-defendant's] culpability, it surely does not reflect [defendant's].").  See also *U.S. v. Koczuk*, 166 F Supp 2d 757 (EDNY 2001)(where defendant acquitted of five counts but convicted of single count of importing caviar with market value of less than $100,000, but where codefendant convicted of six counts of importing $11 million worth of caviar, offense level "*has been extraordinarily magnified by a circumstance that bears little relation to the defendant's role in the offense*" – here, defendant's role in the conspiracy bore little correlation to $11 million because defendant was not actively involved in codefendant's business, was merely a low level employee, chauffer and interpreter, who took orders from co-D – 4 level minimum role reduction simply not adequate*); U.S. v. Bruder*, 103 F. Supp. 2d 155, 181 (EDNY 2000)(where police officer assisted another in sexual assault of prisoner two level departure granted in addition to two level adjustment for minor role because adjustment inadequate to show

peripheral role).

In the instant case, Forbes' peripheral role is illustrated by the length of time

that the investigation proceeded before he became involved.  He was only involved in the

investigation for a short period of time, and his involvement was peripheral to the overall

criminal investigation.  Thus, his peripheral involvement should be taken into account

and an additional departure is warranted.

4.      **A downward departure is appropriate where the portion of the charged
        crime involving cocaine and cocaine conspiracy constituted aberrant
        behavior**.

The allegations involving cocaine constitute aberrant behavior that is totally

outside of both the character and personal history of Mr. Forbes.  As such, a departure or

variance is warranted to reflect this aberration.

A departure for aberrant conduct is authorized for "a single criminal occurrence

or single criminal transaction that was committed without significant planning, was of

limited duration, and represented a marked deviation from an otherwise law abiding life."

5K2.20 App. Note 1.  Under this standard, "The Sentencing Commission specifically

rejected a rule that would have allowed a departure for aberrant behavior only in a case

involving a single act that was spontaneous and seemingly thoughtless…The

Commission saw the need to define aberrant behavior more flexibly and to slightly relax

the single act 'rule'." *U.S. v. Gonzalez*, 281 F.3d 38 (2nd Cir. 2002). *See also U.S. v.

Smith*, 387 F.3d 826 (9th Cir. 2004) (where defendant convicted of retaliating against a

witness (18 U.S.C. 1513(b)(2)), case remanded to district court to reconsider its refusal to

grant aberrant behavior departure, noting that fact that defendant may have had time to

plan the offense does not mean it was the result of "significant planning," and that crime

lasted for ten minutes does not mean it lasted a long time; and that the conduct was

indeed extraordinary): *U.S. v. Vieke*, 348 F.3d 811 (9th Cir. 2003) (court of appeals refuses to review district court's four level downward departure to probation in credit card fraud case where district court said crime committed because of "pathological nature of the [gambling] addiction" and was "totally out of suit with the rest of her life and the behaviors" even though fraud went on for years).

Arguably for all cases in light of *Booker*, the law is much more favorable with regard to aberrant behavior (at least in the Ninth Circuit). *See U.S. v. Working*, 224 F.3d 1093 (9th Cir. 2000) (*en banc*) (where woman convicted of attempted murder of husband and use of firearm, when he threatened divorce and taking children, district court may properly depart 21 levels for aberrant conduct even though crime well-planned and relentlessly executed, but remanded for court to give reasons for extent (from range of 87 to 108 months to one day), *but on appeal after remand, departure vacated because unreasonably great and based on impermissible factors.* 287 F.3d 801 (2002); *U.S. v. Lam*, 20 F.3d 999, 1003-05 (9th Cir. 1994) (where law-abiding immigrant obtained sawed-of shotgun to protect his family against predators after he and pregnant sister were robbed by three gunman, and where defendant not aware that he possessed illegal weapon, and where only prior driving without a license, court had discretion to downward depart from 18 month sentence because of aberrant conduct, court rejects view that aberrant conduct must be single incident; and rejects view that must be first offense).

*See also U.S. v. Takai*, 941 F.2d 738, 744 (9th Cir. 1991) (multiple incidents over six-week period in effort to obtain green cards by bribing INS official still constituted a single act of aberrant behavior where defendant's crime did not lead to pecuniary gain, government agent influenced defendant to commit crime, and one defendant committed charitable acts-outstanding good deeds); *U.S. v. Dickey*, 924 F.2d

836 (9th Cir. 1991) (crime may be aberrant where defendant stole $80,000 which he received by bank error); *U.S. v. Garcia*, 182 F.3d 492 (10th Cir. 1998) (where defendant pled guilty to possession of a firearm by a  prohibited person, the district court did not abuse its discretion in departing downward by three levels to probation when, as one of eleven factors, it considered that crime was aberrant conduct where the defendant had been law abiding until age 35 when his marriage disintegrated).

        In the instant case, the allegations involving cocaine constitute aberrant behavior and a departure is warranted.  For his entire life, Mr. Forbes was a law-abiding citizen.  Mr. Forbes became addicted to oxycodone, but he never had any involvement whatsoever with cocaine.  The one allegation involving Mr. Forbes' alleged peripheral involvement in a cocaine sale, even if believed, represents a single occurrence of aberrant behavior.  As such, a departure is warranted to reflect the fact that the alleged conduct involving cocaine is simply not part of the person that Mr. Forbes is.  *See U.S. v. Myers*, 353 F.Supp.2d 1026 (S.D. Iowa 2005) (where defendant 40 years of age with no record and lead blameless life convicted of unlawful possession of a short-barreled shotgun he sold to his cousin four years earlier, and where advisory guideline 20-30 months, departure to time served and three month term of supervised release because of aberrant conduct and because other purposes of sentencing satisfied*); U.S. v. Hued*, 338 F.Supp.2d 453 (S.D.N.Y. 2004) (where defendant pled guilty to maintaining a place to store heroin with range of 41 to 51 months, downward departure of 11 levels granted under 5K2.20(c) for aberrant conduct because she "was never actively involved in the planning of the criminal conduct" and her conduct was of "limited duration" and "a marked deviation from an otherwise law-abiding life*."); U.S. v. Booe*, 252 F. Supp. 2d 584 (E.D. Tenn. 2003) (defendant who robbed bank with note granted 9 level downward departure for

aberrant conduct because she was a 22 year old black single mother of a one year old son, had severe depression, no criminal record and felt guilt over child's well being--little planning and no violence); *U.S. v. Hancock*, 95 F.Supp.2d 280 (E.D.Pa. 2000) (downward departure warranted in felon in possession case where defendant happened upon weapon and possessed it for a very short time to dispose of it, because conduct was aberrant*)*.

 *See also U.S. v. Iaconetti*, 59 F.Supp.2d 139 (D.Mass.1999) (Defendant, who had no prior criminal record and who pled guilty to the charge of conspiracy to possess with intent to distribute cocaine, was entitled to eleven-level departure from Sentencing Guidelines (from level 25 to level 14) based on "single acts of aberrant behavior")*; U.S. v. Martinez-Villegas*, 993 F.Supp. 766 (C.D. Cal. 1998) (in drug case downward departure of one level granted because of aberrant conduct where government offered much money to defendant with no criminal record to perform single act of transporting drugs); *U.S. v. Delvalle*, 967 F. Supp. 781 (E.D. N.Y. 1997) (defendant's involvement in drug conspiracy on two different days, separated by a week, were so loosely related they could be seen as single act of aberrant conduct warranting twelve-level departure*); U.S. v. Baker*, 804 F.Supp.19, 21 (N.D.Cal. 1992) (where defendant pled guilty to possession of one kilogram of crack downward departure to minimum mandatory sentence proper where act was "single act of aberrant behavior"); *U.S. v. McCarthy*, 840 F. Supp. 1404 (D. Colo. 1993) (aberrant behavior departure to probation proper for armed bank robber who was disorganized and unsophisticated where he was also facing 5 year mandatory minimum for possession of gun).

5.        **A downward departure or variance under § 3553 is appropriate because of Forbes' extraordinary employment history, his history of charitable community service, and his dedication to family**.

The PSR details some of the excellent employment history and community service of Mr. Forbes.  Further evidence of Mr. Forbes' history of community service and helping others can be found in the attached letters of support that were filed with this Honorable Court.

Mr. Forbes has worked since he was 16 years old.  He held a part-time job during high school and worked full-time every summer.  Mr. Forbes also worked to pay his own way through college, and after college he secured a full-time job.  In addition to Mr. Forbes' excellent employment history, Mr. Forbes has also consistently volunteered within his own community. Mr. Forbes has volunteered as an athletic coach for a number of different East Boston sports leagues.  Mr. Forbes has also volunteered at the Boys & Girls Club, he has organized clothing donations for East Boston residents who have lost their homes to fires, and Mr. Forbes has volunteered at his church for his entire adult life.

Thus, either a downward variance under § 3553(a) or a downward guidelines departure is warranted based on Mr. Forbes impressive employment history, his history of charitable works and volunteering, his dedication to his family, and his lack of any prior criminal record.  Based on these factors, a departure is warranted.  *See U.S. v. Thompson*, 74 F.Supp.2d 69 (D.Mass. 1999) (departure from 87 to 60 months in drug case-setting out framework for determining when employment history and family ties warrant downward departure as extraordinary – here "not only did defendant exhibit a sustained commitment to his family dating back to the instant he became a father, he

consistently worked to provide for them"), reversed on other grounds 234 F.3d 74 (1st Cir. 2000) (district court erred in limiting its inquiry to cases involving crack cocaine dealers and then asking whether defendant's record stood apart from the rest).  *See also U.S. v. Jones*, 158 F.3d 492 (10th Cir. 1998) (where defendant pled guilty to possession of a firearm by a prohibited person, the district court did not abuse its discretion in departing downward by three levels when, as one of eleven factors, it considered the defendant's "long impressive work history…where good jobs are scarce."); *U.S. v. Higgins*, 967 F.2d 841 (3d Cir. 1992) (young age and stable employment will justify a downward departure if "extraordinary"; remanded to see if judge realized he had power); *U.S. v. Alba*, 933 F2d 1117 (2d Cir. 1991) (long-standing employment at two jobs*); U.S. v. Jagmohan*, 909 F.2d 61 (2d Cir. 1990) (exceptional employment history and nature of the crime); *U.S. v. Big Crow*, 898 F.2d 1326, 1331-32 (8th Cir. 1990) (excellent employment record*); U.S. v. Shoupe*, 988 F.2d 440 (3d Cir. 1993) (age and immaturity considered in whether criminal history overstates propensity); *U.S. v. Ragan,* 952 F.2d 1049 (8th Cir. 1992) (defendant stopped using drugs, maintained steady employment, and offered to cooperate-departure affirmed where government did not object at sentencing).

Both Mr. Forbes' excellent employment history and his record of community service and charitable works for the past 15 years are sufficient grounds for departure or a variance. *United States v. Thurston*, 544 F.3d 22 (1st Cir. 2008); *United States v. Tomko*, 562 F.3d 558, 560 (3rd Cir. 2009).

6.    **A downward departure is appropriate where the government manipulated the charges, even if no bad faith.**

A departure is appropriate because the manner in which the government charged Forbes was set up to achieve the harshest possible sentence for conduct that could and should be punished in a different manner.  *See* U.S.S.G. Pt. A4 ("a sentencing court may control any inappropriate manipulation of the indictment through use of its departure power"); *U.S. v. Gamez*, 1 F.Supp. 2d 176 (EDNY 1998) (Weinstein, J.) (departure from level 20 to 15 warranted in money laundering case because nature of the crime more closely resembled structuring crime which had lower guidelines*); U.S. v. Lieberman*, 971 F.2d 989, 995 (3rd Cir. 1992)(where prosecution charged defendant with tax evasion and embezzlement, knowing not groupable and other defendants not charged, court can depart downward to ensure equality in sentencing and that U.S. Attorney not manipulating sentencing even absent bad faith); see *U.S. v. Deitz*, 991 F.2d 443 (8th Ci8r. 1993)(Bright, J. Dissenting)(time to check enormous abuse and allow departure where federal government agrees to take over state prosecution after state judges dismiss charges for violation of state speedy trial act).

7.    **A downward departure is appropriate where the government controls the offense level by determining kind and quantity.**

Because of the government's investigatory role prior to prosecution, it controls the offense level.  Because any criminal activity attributed to Forbes could have been ceased to allow the rehabilitation process to begin at first notice, the offense level that resulted from the allowance of this continued criminal activity should be departed from. In *U.S. v. Williams,* 372 F. Supp. 2d 1335 (MD Fla. 2005)(Presnell, J.), the defendant was convicted of delivery of crack cocaine and the guideline range called for a sentence of 30

years to life (because of 851 enhancement and career offender status).  The court,

however, imposed a sentence of 204 months in part because "the government essentially

controls the offense level, by reasons of its undercover purchasing decision" because the

government could have bought powder not crack, and also because the layering of

Chapter 4 enhancements resulted in a double-compounding effect, increasing the

defendant's minimum guidelines sentence to 360 month in light of the same criminal

conduct. *Id*.

In the instant case, the government approach to the charges resulted in an

offense level that is much greater than that necessary to comply with the statutory

purpose.  A downward departure is necessary.

**8.**     **A downward departure is appropriate because of the disparity between State and Federal sentencing for oxycodone.**

A departure is warranted because of the disparity between state and federal

sentencing for oxycodone possessory and distribution crimes. *See U.S. v. Wilkerson,* 411

F.2d (1st Cir. 2005)(where the First Circuit held that where a District Court judge

"repeatedly expressed his concern about the disparate treatment between federal and state

court sentences in similar cases, but states that the Guidelines did not permit him to take

that disparity into account, the case should be remanded for resentencing in part because

of the need to avoid unwarranted disparity).

**9.**     **A downward departure is appropriate based on the oxycodone disparity on the drug equivalency table used to calculate Mr. Forbes' sentence.**

A departure is warranted because of the disparity between the drug equivalency

ratio used to equate oxycodone to marijuana and other substances.  *Kimbrough v. United*

*States*, 128 S.Ct. 558 (2007).

As discussed previously in this memorandum, Forbes objects to the conversion table that equates one gram of oxycodone to 6700 grams of marijuana.  Similarly, Mr. Forbes objects to the drug equivalency scale used in the PSR to calculate his base level offense.   If this Court is not inclined to correct the disparity by applying a more appropriate conversion rate, then this Court should grant a downward departure.

Forbes contends that the equivalency for 1 gram of oxycodone to marijuana should be treated like the cocaine equivalency.  If the oxycodone to marijuana equivalency is used, it would result in a substantively unreasonable sentence in violation of Forbes's right to due process as guaranteed by the Fifth Amendment to the United States Constitution because the sentencing range would be determined by an arbitrary and unsupported oxycodone to marijuana equivalency standard.   Because the penalty disparity between oxycodone and like drugs is arbitrarily assigned, a sentence that far exceeds the penalty that one would be subjected to for convictions of similar offenses with similar narcotics such as cocaine or codeine violates due process.

As such, a departure is necessary to correct the disparity.  *Kimbrough v. United States*, 128 S.Ct. 558 (2007).

**10.**   **A downward departure is appropriate based on Forbes' conduct and extraordinary rehabilitation since his arrest and pretrial detention.**

A departure is warranted because of Forbes' extraordinary rehabilitation.  In this case, Forbes' has embraced rehabilitation and his recovery has been truly remarkable.

Mr. Forbes entered the SSTAR program on March 2, 2010.  Mr. Forbes' positive attitude allowed him to exceed the expectations of the program.  Mr. Forbes described his experience at SSTAR as "a great opportunity to learn."

Mr. Forbes entered the Steppingstone program on March 22, 2010.  Mr. Forbes quickly incorporated coping skills and set goals for his treatment and recovery.  Mr. Forbes agreed to voluntarily limit his family visits to allow him to better focus on his recovery.  Mr. Forbes voluntarily joined a 12-step program outside of Steppingstone, received a sponsor, and began advancing his recovery. *(See letter from Judith Oxford, Pretrial Services, to Judge Stearns, 10/21/10).*

Mr. Forbes was a leader in the Steppingstone house and took new arrivals under his wing, showing them how to best adjust to sober life.  Because of his tremendous dedication to his recovery, Mr. Forbes graduated early from Steppingstone and is now involved in individual therapy at North Suffolk Mental Health.  In addition, Mr. Forbes is a regular speaker at NA/AA meetings. Mr. Forbes also previously coordinated a community cleanup project and rallied volunteers from the program to work on the community project.  *(See letter from Judith Oxford, Pretrial Services, to Judge Stearns, 10/21/10).*

Further, Mr. Forbes' remarkable rehabilitation has caused Mr. Forbes to want to continue to help other addicts.  Mr. Forbes has already contacted a number of organizations and his church about his desire to sponsor a drug recovery program in East Boston.  Mr. Forbes has initial plans for an East Boston Oxycontin Counseling Program. As such, Mr. Forbes' recovery has truly been extraordinary.

Thus, either a downward variance under § 3553(a) or a departure is warranted because of Forbes' extreme rehabilitation and his charitable works. *United States v. Thurston*, 544 F.3d 22 (1st Cir. 2008); *United States v. Maddalena*, 893 F.2d 815 (6th

Cir.1989); *United States v. Harrington*, 741 F.Supp. 968 (D.D.C.1990); *United States v. Rodriguez*, 724 F.Supp. 1118 (S.D.N.Y.1989).

Post-sentence rehabilitation may be a permissible factor in evaluating whether to give a downward departure in sentencing.  See *Gall v. United States*, 128 S.Ct. 586 (2007).  See also *Pepper v. United States*, cert granted 2010, opinion below at 570 F.3d 958.  As such, pre-sentence conduct and rehabilitation is certainly relevant. *Thurston*, 544 F.3d 22 (1st Cir. 2008); *United States v. Tomko*, 562 F.3d 558, 560 (3rd Cir. 2009).

Here, a departure is warranted based on Mr. Forbes' remarkable rehabilitation.

## 11.   A downward departure is appropriate because Forbes poses no risk of recidivism

A departure is warranted because Forbes poses no risk of recidivism.  Forbes' alleged conduct was directly attributable to his addiction to oxycodone.  Forbes has since achieved sobriety and has successfully maintained that sobriety.

Since Forbes poses no risk of recidivism, a downward departure is warranted. 18 U.S.C.  § 3553(a)(2)(C).

## 12.   A downward departure is appropriate because Forbes' drug addiction made his actions not voluntary

A departure is warranted because Forbes' involvement in the alleged oxycodone sale was caused by Forbes' own drug addiction and was thus not a voluntary action to seek profit but rather an addict in need of more pills.  See *U.S. v. Matheny*, 450 F.3d 633 (6th Cir. 2006) (considering drug addiction since childhood in evaluating reasonableness of sentence).  See also 5k2.13.

13. **A downward departure is appropriate where the amount of drugs distributed overstated Mr. Forbes' culpability.**

Forbes's involvement in the instant distribution scheme is minimal and the amount of drugs attributed to Forbes overstates that culpability; thus, Forbes is entitled to a departure. *U.S. v. Genao*, 831 F. Supp 246 (SDNY 1993) (because guidelines do not consider the relationship between the length of the distribution period and the quantity distributed, court may depart downward where total quantity was distributed over a substantial period time), *aff'd in part*, *U.S. v. Lara*, 47 F3d 60, 66 (2nd Cir 1995)(same at least for offense levels over 36). Here, the distribution period was relatively minimal in the present case and the PSR should so reflect.  A downward departure is warranted.

14. **A downward departure is appropriate where the Federal Bureau of Prisons refuses to honor judicial recommendation of CTC.**

A departure is warranted based on the fact that the Federal Bureau of Prisons does not honor judicial recommendations with respect to sentencing.  The purposes of the sentencing statute would be ignored if Mr. Forbes is sent to prison, where he will be outside the purview of the Court and will face difficulties in his attempt to continue his remarkable recovery from addiction.  *U.S. v. Serpa*, 251 F. Supp. 2d 988 (D. Mass. 2003))(where BOP no longer follows its long standing policy of honoring judicial recommendation to place defendants who fell within Zone C of the Sentencing Table in CTC for the imprisonment portions of their sentences, district court grants downward departure to defendant who pled guilty to three counts of filing false tax returns and whose guideline sentencing range was 10-16 months before BOP announced its policy to avoid any hint of an ex post facto violation in his sentencing because the change not foreseeable).

### 15.    Departure Is Warranted Because Forbes Has Shown Extreme Remorse.

Genuine remorse by a defendant is a ground for departure.  *United States v. Fagan*, 162 F.3d 1280, 1284-1285 (10th Cir.1998)(because guidelines do not expressly forbid the departure, under rationale of *Koon*, court may downward depart where defendant showed great remorse "to an exceptional degree" even though D already received adjustment for acceptance of responsibility); *United States v. Jaroszenko*, 92 F.3d 486 (7th Cir.1996).

Here, Forbes has accepted responsibility and he has shown genuine remorse.  His remorse, however, is more than just feeling regret.  Instead, Forbes has chosen to act on his remorse by helping others who also struggle with addiction.  This type of extreme remorse warrants a departure.

### 16.    Departure Is Warranted Based On Circumstances Not Adequately Taken Into Consideration By The Guidelines.

In the arena of drug distribution crimes, Forbes is not a typical defendant. Instead, Forbes is a hard-working and dedicated family man who simply became addicted to oxycodone pills.  The allegations regarding Forbes' minimal involvement in selling oxycodone pills arose only because Forbes needed more pills for himself to feed his addiction.

The advisory Sentencing Guidelines provide that "sentencing courts [are] to treat each guideline as carving out a `heartland,' a set of typical cases embodying the conduct that each guideline describes." U.S.S.G. Ch.1, Pt. A, 4(b), p.s. "When a Court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted." *Id.*  See also *Koon v. United States*, 518 U.S. 81, 113 (1996).

Here, both the Guidelines and the PSR recommended sentence suggest a sentence for the charged crime which fails to reflect that this is a unique case that falls outside of the heartland for which the guideline was designed.  As such, a departure is warranted. Section 5K2.0(2) (B) ; *Gall v. United States*, 128 S. Ct. 586, 598 (2007); *Koon v. United States*, 518 U.S. 81, 113 (1996).


## POST-*BOOKER* CONSIDERATIONS

It is now settled law pursuant to *United States v Booker,* 125 S.Ct. 738 (2005), that when imposing a sentence the Court must consider the Sentencing Guidelines and Policy Statements.   Additionally, *Booker* requires that in addition to considering the final advisory guideline calculation, the sentencing court is required to consider the statutory sentencing factors at 18 U.S.C. §3553(a) among which are (a)(1), the nature and circumstances of the offense and the history and characteristics of the defendant.   *See Nelson v. United States*, 129 S.Ct. 890, 891 (2009) (re-affirming that sentencing court must consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors).

However, sentencing courts similarly have the discretion to weigh a multitude of mitigating and aggravating factors beyond those set forth by statute including age, education and vocational skills, mental and emotional conditions, lack of guidance as a youth, and drug and alcohol dependence.  *See U.S. v. Ameline*, 409 F.3d 1073, 1093 (9th Cir. 2005).

As the United States Supreme Court so eloquently held:

> It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.

*Gall v. United States*, 128 S. Ct. 586, 598 (2007), *quoting Koon v. United States*, 518 U.S. 81, 113 (1996).

The Sentencing Reform Act, 18 U.S.C. §3551 et seq., imposes an "overarching instruction" that district courts must select a sentence "sufficient but not greater than necessary" to achieve the sentencing goals in section 3553(a)(2). *Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007). Those goals include the need for the sentence to (A) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (B) afford adequate deterrence to criminal conduct, (C) protect the public from further crimes of the defendant, and (D) provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner. *Gall*, at 597, n. 6.

To arrive at a sentence that serves those goals without being greater than necessary, the Act directs the judge to consider the many factors listed in §3553(a)(1) - (7). These considerations are more than a laundry list of discrete sentencing factors. They comprise "a tapestry of factors, through which runs an overarching principle," that principle being the Court's duty to "construct a sentence that is minimally sufficient to achieve the broad goals of sentencing." *United States v. Rodriguez*, 527 F.3d 221, 228 (1st Cir.2008).

A.    **History of John Forbes**

As discussed in detail above, John Forbes is 31 years old and he is married with two young children.

In addition to his excellent employment history, Mr. Forbes has been very actively involved in community service.  Mr. Forbes has volunteered as an athletic coach for a number of different East Boston sports leagues.  Mr. Forbes has also volunteered at the Boys & Girls Club, he has organized clothing donations for East Boston residents who have lost their homes to fires, and Mr. Forbes has volunteered for his church.

Further, Mr. Forbes is actively involved in raising his own two young children, which includes attending all school functions and parent/teacher conferences for his oldest school-aged child.

Mr. Forbes is before this Honorable Court because he became addicted to oxycodone, and his addiction caused him to become involved in the sale of oxycodone pills so that he could obtain a few pills for himself.

Since the alleged criminal conduct, Mr. Forbes has successfully completed a residential drug treatment program.  Mr. Forbes was a leader in the Steppingstone house and took new arrivals under his wing, showing them how to best adjust to sober life. Because of his tremendous dedication to his recovery, Mr. Forbes graduated early from Steppingstone and is now involved in individual therapy at North Suffolk Mental Health. In addition, Mr. Forbes is a regular speaker at several NA/AA meetings.

Notably Mr. Forbes has already contacted a number of organizations and his church about his desire to sponsor a drug recovery program in East Boston.  Mr. Forbes

has initial plans for an East Boston Oxycontin Counseling Program. Mr. Forbes recovery has truly been extraordinary.

The History and Characteristics of John Forbes support the requested sentence of a term of probation. Additionally, Mr. Forbes remarkable history of community service and employment gives this Court the authority to grant a downward variance. *United States v. Thurston*, 544 F.3d 22 (1st Cir. 2008).

**B.      Meeting the Purposes of Sentencing**

This Court knows well the statutes and the recent case law on sentencing. Congress delineated the goals of sentencing in 18 U.S.C. § 3553(a), and required courts to craft a criminal defendant's sentence in light of these policy directives. The overarching directive under Section 3553(a) is that the Court must impose a sentence that is "sufficient, but not greater than necessary, to comply with" the purposes of sentencing. 18 U.S.C. § 3553(a). These purposes include the need to reflect on the seriousness of the offense, promote respect for the law, provide just punishment, create adequate deterrence, protect the public from future crimes of the defendant, and provide the defendant with necessary treatment and training. 18 U.S.C. § 3553(a).

**1.      The Proposed Sentence Is Sufficient, But Not Greater Than Necessary, To Reflect the Serious Nature Of the Offense.**

In the instant case, the proposed sentence of a term of probation sufficiently reflects the seriousness of this charged offense. Mr. Forbes has already spent 75 days in a federal jail. Mr. Forbes has also completed a residential drug addiction treatment program. As such, a period of supervised probation is sufficient because it would force Mr. Forbes to remain clean and sober while continuing with his recovery.

Probation, as the Supreme Court recently noted, is not a mere slap on the wrist. Rather, it is a "'substantial restriction of freedom,'" *Gall*, 128 S.Ct. at 593. Here, a sentence to a period of probation sufficiently reflects the seriousness of this offense primarily because a term of probation is a difficult and sufficient sentence for a first-time offender to serve for a crime that involved no violence or guns. 18 U.S.C. § 3553(a)(2)(A).

Ultimately, the proposed sentence is of a sufficient length and nature to reflect the serious nature of this crime, while still allowing Mr. Forbes the opportunity to continue his extraordinary recovery and lead a productive life. *See Gall v. U.S.*, 128 S. Ct. 586, 593 (2007); *U.S. v. Jenkins*, 537 F.3d 1 (1st Cir. 2008) (Although district court denied departure for overstated criminal history, it still varied 62 months below the minimum guideline sentence after reviewing defendant's history as a low-level, non-violent drug offender).

### 2.    The Proposed Sentence Promotes Deterrence.

The proposed sentence promotes general deterrence because it demonstrates that even a defendant with no criminal record faces a harsh penalty for being peripherally involved in a drug sale. 18 U.S.C. § 3553(a)(2)(B).

As for specific deterrence, supervised probation will specifically deter Mr. Forbes from committing any future crimes because he knows that he will go to prison if he violates any of the conditions of probation.

### 3.    Nature and Circumstances of the Offense.

Mr. Forbes was involved in only one drug transaction for 125 oxycodone pills, which took place on August 20, 2009. According to the testimony of James Doyle at the detention hearing, which took place on December 21, 2009, the investigation referenced

by the government began in "approximately June of 2008." (Tr.-5).   This investigation

focused on co-defendant Lawrence Taylor and an individual by the name of Anthony

Cristallo.  Mr. Forbes was not mentioned and did not even come to the attention of law

enforcement officials with respect to any potential drug involvement until August of

2009.

      The only drug transaction directly attributed to Mr. Forbes was the single

transaction that took place on August 20, 2009.  Importantly, this was not a sale focused

on monetary profit for Mr. Forbes.  Instead, this sale specifically allowed Mr. Forbes to

"keep five" oxycodone for himself, which further evidenced his severe addiction to this

drug.

      As such, this is not a case involving a serious drug dealer or a master criminal or a

violent repeat offender. Instead, this case involves a young man with no prior criminal

record and a history of community service who became peripherally involved in an

oxycodone transaction so that he could obtain a few free oxycodone pills to satisfy his

own addiction.

     **4.**      **The Proposed Sentence Does Not Create An Unnecessary Risk of
Future Crimes By Forbes Because His Probation Will Be Supervised
And He Will Have A Support System In Place To Remain Clean And
Sober.**

      This is not a case in which incarceration is needed to protect the public from

further crimes by Mr. Forbes.  In fact, there is empirical evidence to suggest that the

opposite is true:  Mr. Forbes will actually help other people to battle addiction if he is

sentenced to probation and not a term of incarceration.

      Here, we can look to the period of time that Mr. Forbes has been home on pretrial

release after he completed inpatient rehabilitation. During this period of time, Mr. Forbes

has remained clean and sober, and he has not been involved in any illegal conduct.

Further, instead of endangering the public, Mr. Forbes has actively taken steps to help the

public by working to form support groups for other oxycontin addicts in the East Boston

area. As such, this is empirical evidence that imprisonment is not necessary for purposes

of protecting the public. 18 U.S.C.§ 3553(a)(2)(C).

This is also not a case where incarceration is necessary to rehabilitate or reform a

life of criminal behavior. Mr. Forbes has no prior criminal record. Drug addiction

rehabilitation, however, is relevant to these proceedings. Notably, Mr. Forbes has

already completed a lengthy inpatient rehabilitation program. As such, no prison

rehabilitation is necessary in this case. 18 U.S.C. § 3553(a)(2)(D).

Thus, as in *Gall,* in this case "'a sentence of imprisonment may work to promote

not respect, but derision, of the law if the law is viewed as merely a means to dispense

harsh punishment without taking into account the real conduct and circumstances

involved in sentencing.'" *Gall,* 128 S.Ct. at 599 (quoting District Judge's opinion). Mr.

Forbes' age, his spotless prior record, his family ties, his strong commitment to helping

the community and to helping other addicts, and the fact that the alleged conduct

stemmed from drug addiction and not criminal malice, are all factors that make probation

the appropriate sentence in this case.

## 5.     Avoiding Unwarranted Sentence Disparities.

With regard to avoiding unwarranted disparity between similarly situated

defendants pursuant to §3553(a)(6), it is noted at the outset that there is no data available

from any source that would permit a meaningful comparison between Mr. Forbes and

other unknown drug addicts with no prior criminal records and a history of community

service who become peripherally involved in one drug transaction in order to obtain a

few free oxycontin pills.

However, since this is a unique case involving an arguably unique defendant, this

Court has considerable discretion to arrive at a sentence that is fair and just based on the

specific circumstances. *United States v. Martin*, 520 F.3d 87, 89 (1st Cir. 2008).


## **CONCLUSION**

Over 75 letters of support were filed along with this memorandum.  These letters

include letters of support from the local community, from religious leaders, from

counselors, teachers, coaches, and family members.  Although it is no doubt common for

this Court to receive support letters from the families of defendants before sentencing, in

this case the support letters are unique.

The support letters here are unique not just because of their quantity but also

because of their content.  The letters present a recurring theme that is repeated so

frequently because it is true:  John Forbes is a kind and decent human being from a good

family who has spent his life helping others.  John Forbes became addicted to oxycontin.

John Forbes is now clean and sober, and has continued to help others.

Based on all of the factors addressed above, a sentence of probation for Mr.

Forbes is appropriate and just.  Any term of incarceration for Mr. Forbes would be a

greater punishment than necessary.  Forbes committed a drug offense because he was a

drug addict.  He is now clean and sober, and he understands his behavior was

unacceptable.  He has accepted responsibility, he has spent 75 days in jail, and he is ready

to be sentenced by this Court.  Under these circumstances, and based on the arguments

detailed above regarding the appropriate base offense level, the appropriate departures,

and meeting the purposes of sentencing, Mr. Forbes asserts that a sentence to a term of

probation is appropriate.

      For all the foregoing reasons, Mr. Forbes respectfully requests that this Honorable

Court sentence him to a term of probation, along with any conditions that this Court

deems necessary.


Respectfully submitted
JOHN FORBES
By his Attorney,

/s/ Rosemary Scapicchio
Rosemary Curran Scapicchio
107 Union Wharf
Boston, MA 02109
(617) 263-7400
BBO# 558312


**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served
upon the attorney of record for each party and upon any party appearing
pro se by complying with this Court's directives on electronic filing.

Dated: January 14, 2011        Signed: /s/ Dennis  Toomey